IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| DEUTZ CORPORATION | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION FILE |
| v. | ) | NO. _____ |
| | ) | |
| ENGINE DISTRIBUTORS, INC. | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## COMPLAINT
## FOR DAMAGES

Plaintiff DEUTZ Corporation ("DEUTZ") hereby files its Complaint for Damages against Defendant Engine Distributors, Inc. ("EDI") as follows:

## PARTIES, JURISDICTION, AND VENUE

1. DEUTZ is a Delaware corporation with its principal place of business in Norcross, Gwinnett County, Georgia.

2. Defendant EDI is a New Jersey corporation with its principal place of business in Blackwood, New Jersey. Service of process can be perfected by serving EDI's Vice President, Jaime Cummins, at EDI's principal place of business, which is located at 400 University Court, Blackwood, New Jersey 08012-3214.

1

Alternatively, EDI can be served with process by serving Glenn Cummins III, EDI's co-Vice President, at that same address.

3. Jurisdiction is proper in this Court based on 28 U.S.C. § 1332, as the matter in controversy exceeds the sum or value of $75,000 (exclusive of interest and costs) and is between citizens of different states.

4. Venue is proper in this Court based on 28 U.S.C. § 1391 because a substantial part of the events giving rise to this case occurred in this district. In addition, most or all of the claims asserted in this action stem from Distributor Agreements between DEUTZ and EDI that include a forum selection clause rendering venue in this Court proper.

5. This Court has *in personam* jurisdiction over EDI in that EDI has conducted business in this district, it has travelled to Georgia in furtherance of its business, and it has purposefully directed its activities toward Georgia. EDI has also submitted to the jurisdiction of this Court (a) pursuant to the express terms of the Distributor Agreements between the parties; and (b) pursuant to the standard DEUTZ Terms and Conditions of Sale which govern the sale of all DEUTZ product.

## FACTUAL BACKGROUND

### A. The Distributor Agreements

6. DEUTZ AG is an engine manufacturer based out of Germany. DEUTZ, the United States affiliate of DEUTZ AG, is a sales, service, parts and application

engineering center supporting the DEUTZ product range of engines. DEUTZ offers for sale various products manufactured by DEUTZ AG, including internal combustion diesel engines for use in agricultural and industrial applications.

7. For many years, EDI operated as a distributor of DEUTZ products. EDI operated in this capacity pursuant to four (4) separate Distributor Agreements (collectively, the "Agreements"). The Agreements are identical in all material respects except with respect to the territories they cover. A true and correct copy of one such Distributor Agreement, as amended, is attached hereto as **Exhibit A**. The Agreements incorporate by reference the DEUTZ Distributor Policy and Procedures Manual ("Policy Manual"), which also governed the DEUTZ/EDI relationship while EDI was acting as a DEUTZ distributor.

8. The territories covered by EDI's Agreements included portions of several states, including Connecticut, New York, New Jersey, Maryland, Delaware, Pennsylvania, Florida, and Georgia.

9. Section 13.10 of the Agreements provides:

> This Agreement has been first signed by Distributor and sent to the place of business of DEUTZ in Atlanta, Georgia, for acceptance and has thereafter been signed and delivered or mailed by DEUTZ to Distributor. The parties agree that the laws of the State of Georgia, to the exclusion of the laws of any other jurisdiction, shall be applicable to this Agreement, its construction, interpretation, effect, performance and non-performance and the consequences thereof, as well as to all transactions between the parties contemplated herein, and their construction, interpretation, effect, performance and non-performance and the consequences thereof.

<u>See</u> Exhibit A, § 13.10.

10. Section 13.11 of the Agreements provides:

For all disputes or controversies which may arise between them out of or in connection with this Agreement, its construction, interpretation, effect, performance or non-performance or the consequences thereof, as well as out of or in connection with any transaction between them contemplated herein, or the construction, interpretation, effect, performance or non-performance thereof or the consequences of any of the foregoing, the parties hereby consent to the jurisdiction of the courts of the State of Georgia and of the Federal courts sitting in the State of Georgia, and Distributor agrees that any and all process directed to Distributor in any such litigation may be served upon Distributor outside of the State of Georgia with the same force and effect as if such service had been made within the State of Georgia; and the parties hereby waive the right to trial by jury in any such litigation.

<u>See</u> **Exhibit A**, § 13.11.

### B. **The Prior Litigation and the Termination of the Distributor Agreements**

11. In or around April 2016, DEUTZ initiated a lawsuit against EDI in the United States District Court, Northern District of Georgia (Atlanta Division), case styled <u>Deutz Corporation v. Engine Distributors, Inc.</u>, 1:16-cv-1144-MLB. In that lawsuit, DEUTZ alleged that EDI was in material default of several provisions of the Agreements.

12. Because of EDI's material breaches, DEUTZ sought, among other things, a judicial declaration that good cause existed to terminate the Agreements.

13. On November 18, 2019, the Court entered an Order finding, among other things, that good cause existed for DEUTZ to terminate the Agreements.

4

14. Thereafter, on November 25, 2019, DEUTZ (via counsel) notified EDI that DEUTZ would elect to terminate the Agreements, with an effective termination date of January 31, 2020 (see correspondence attached hereto as **Exhibit B**). This correspondence reminded EDI of its post-termination obligations under the Agreements, including (among other things) the obligation to remove all DEUTZ signage and the following: "[a]ll indebtedness of Distributor to DEUTZ shall be paid immediately[.]"  See **Exhibit B**.

15. So as to allow for an orderly transition, and because the parties were attempting to resolve all outstanding matters between them amicably, DEUTZ agreed to extend this January 31, 2020 deadline on two occasions, through and including February 14, 2020.  See **Exhibits C** and **D**.  DEUTZ agreed to this accommodation without waiver of any of its legal rights.  See **Exhibits C** and **D**.

16. The termination of the Agreements was effective as of February 14, 2020.

### C.   EDI's Failure to Pay for DEUTZ Product EDI Purchased

17. From 2019 through the first several months of 2020, as the formal DEUTZ/EDI relationship was winding down, EDI continued to place orders for DEUTZ product.  These orders were made pursuant to (a) DEUTZ's standard Terms and Conditions of Sale (which govern the sale of all DEUTZ product) and (b) the Agreements (which include additional terms that apply to purchases by distributors

such as EDI).  DEUTZ's standard Terms and Conditions of Sale are attached hereto as **Exhibit E**.  These Terms and Conditions of Sale are included in the Policy Manual, and are also included on invoices that DEUTZ e-mails to buyers of its product.

18.  The Agreements require EDI to, among other things: "meet promptly its payment obligations to DEUTZ for DEUTZ Products and to provide such security for its obligations as DEUTZ may reasonably require from time to time." (See **Exhibit A**, § 4.6).

19.  The Agreements require EDI to "pay DEUTZ for DEUTZ Products within thirty (30) days from the date of shipment or delivery to carrier, whichever is earlier." (See **Exhibit A**, § 6.11).  This is consistent with DEUTZ's standard Terms and Conditions of Sale (see **Exhibit E** at § III(2)).

20.  Also, as noted above, once the Agreements are terminated, "[a]ll indebtedness of Distributor to DEUTZ **shall be paid immediately**[.]"  (See **Exhibit A** at § 10.4)(emphasis added).

21.  As of the date of this Complaint, EDI has failed to (and apparently refuses to) pay for the DEUTZ product it ordered.  A summary of the outstanding charges (which includes reductions for certain credits) is attached hereto as **Exhibit F**.

22. DEUTZ has sent several statements to EDI concerning these charges to no avail. The most recent statement was sent on January 14, 2021. See **Exhibit G**.[1]  At no time has EDI disputed the accuracy of the charges set forth in the statements sent by DEUTZ or denied that the product was shipped.

23. Upon information and belief, EDI has already sold to third-parties the vast majority of the parts and equipment that is reflected in **Exhibits F** and **G**.

### COUNT I:  BREACH OF CONTRACT

24. DEUTZ incorporates by reference the allegations of the preceding paragraphs.

25. By failing to pay for product it ordered and that was shipped by DEUTZ, EDI breached the Agreements and/or DEUTZ's standard Terms and Conditions of Sale.

26. As a consequence of EDI's breach, DEUTZ is entitled to damages to be established at a later date, but in no event less than **$2,625,403.63**.

27. In addition, pursuant to Section III(7) of DEUTZ's standard Terms and Conditions of Sale, late charges at a rate of 1.5% per month are accruing on EDI's

---

[1] Technically, **Exhibit G** includes two invoices – a forty (42) page statement to EDI's New Jersey facility, and a two (2) page statement (which reflects mostly credits) to EDI's Jacksonville, Florida facility.  These two invoices "net out" to the $2,625,403.63 that is due and owing.

outstanding indebtedness.  EDI has been advised of all of the foregoing.  To the extent required, further demand for prejudgment interest is hereby made.

### COUNT II:  ATTORNEY'S FEES

28. DEUTZ incorporates by reference the allegations of the preceding paragraphs.

29. Upon information and belief, EDI is still in active business operations and is operating profitably.

30. EDI has refused to pay DEUTZ despite demands by DEUTZ, and despite being advised on multiple occasions that late charges are accruing.

31. There is no valid legal justification for EDI's failure to pay for the product it ordered.

32. EDI has acted in bad faith, it has been stubbornly litigious, and it has caused DEUTZ unnecessary trouble and expense.

33. Accordingly, DEUTZ is entitled to recover its expenses of litigation, including attorney's fees.  See O.C.G.A. § 13-6-11.

WHEREFORE, DEUTZ prays as follows:

(1) That the Court award principal damages in an amount no less than **$2,625,403.63**;

(2)     That late charges be awarded pursuant to Section III(7) of DEUTZ's standard Terms and Conditions of Sale (or, alternatively, that pre-judgment interest be awarded as set forth pursuant to applicable Georgia law);

(3)     That the Court order EDI to pay to DEUTZ both the costs of this action and the reasonable attorney's fees incurred by it in prosecuting this action; and

(4)     That the Court grant to DEUTZ such other and additional relief as is just and proper.

Respectfully submitted this the 19th day of January, 2021.

*/s/ Matthew B. Ames*
Matthew Ames
Georgia Bar Number 015898
mames@balch.com
Jena Lombard
Georgia Bar Number 213734
jlombard@balch.com

**BALCH & BINGHAM LLP**
30 Ivan Allen Jr. Boulevard, N.W.
Suite 700
Atlanta, Georgia 30308
(404) 261-6020

Attorneys for DEUTZ Corporation